**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **THEORY COFFEE CO, LLC** | § | |
| **PLAINTIFF,** | § | |
| | § | **CIVIL ACTION NO. ______** |
| **v.** | § | |
| | § | |
| **COFFEE & TOAST, LLC,** | § | |
| **DBA COFFEE THEORY and** | § | |
| **MICHELLE AL BELL, aka** | § | |
| **MICHELLE TRINH** | § | |
| **DEFENDANTS.** | § | **JURY TRIAL REQUESTED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Theory Coffee Co, LLC, files this action against Defendant, Coffee & Toast, LLC, false designation of origin, trademark and service mark infringement, dilution and for trade disparagement as follows.

**PARTIES**

1. Plaintiff Theory Coffee Co, LLC ("Plaintiff" and "Theory Coffee"), is a Texas limited liability company with its principal place of business at 318 Royal Oaks Drive, San Antonio, Texas 78209.

2. Defendant Coffee & Toast, LLC dba Coffee Theory ("Defendant" and "Coffee Theory"), is a Texas limited liability company with its principal place of business at 3438 John Simpson Trail, Austin TX, USA 78732-2249. Defendant may be served with this complaint by serving it on its by service upon its manager Michelle Al Bell, aka Michelle Trinh, 3438 John Simpson Trail, Austin, TX 78732-2249.

3. Defendant Michelle Al Bell aka Michelle Trinh is a Texas resident who resides 3438 John Simpson Trail, Austin, TX 78732-2249. Michelle Al Bell Defendant may be served with this complaint by serving her at 3438 John Simpson Trail, Austin, TX 78732-2249.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over the lawsuit pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that this matter raises federal questions arising out of, and under, the Lanham Act, 15 U.S.C. § 1051 *et seq*.

5. This United States District Court may exercise original jurisdiction over the subject matter of this Civil Action based upon the Lanham Act, 15 U.S.C. § 1125(a) for the relief requested herein.

6. This United States District Court may exercise supplemental jurisdiction over the subject matter of this Civil Action pursuant to 28 U.S.C. § 1367(a) for any other state-law claim asserted herein arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

7. This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, Defendant and/or Defendant's agents regularly conduct commerce in the State of Texas, deriving revenue and value therefrom, so as to purposefully avail itself of the privilege of conducting business within the State of Texas, and particularly in this District and this Division.

8. This Court has personal jurisdiction over Defendant because Defendant offers its services in the state of Texas, including in the Western District of Texas and this Division.

9. This Court has personal jurisdiction over Defendant because said Defendant purposefully availed himself of the privilege of conducting activities in the State of Texas.

10. Furthermore, the assumption of jurisdiction in this Division over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

11. This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, the conduct of Defendant and/or Defendant's agents as alleged herein caused and continues to cause injury to Plaintiff in the State of Texas, and, particularly in this District and this Division.

12. Defendant expected its actions to be of consequence in the State of Texas and in this District and this Division.

13. Also, Defendant has committed and caused and directed tortious conduct and harm to occur in the State of Texas and in San Antonio, Bexar County, Texas to Plaintiff.

14. Defendant sells and markets its products to Texas residents.

15. Defendant has minimum contacts and is subject to personal jurisdiction in this District and this Division.

16. Defendant maintains interactive websites soliciting business in this district from Texas residents in connection with its mark.

17. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

18. The acts complained of hereof were specifically directed toward Plaintiff in this District and this Division and the expected harm to Plaintiff occurred and is occurring in this District and this Division.

19. Individual Michelle Al Bell aka Michelle Trinh is the general manager of Coffee & Toast, LLC dba Coffee Theory.

20. At all relevant times, Defendant Michelle Al Bell aka Michelle Trinh controlled and directed all of the acts of Defendant Coffee Theory, including all of the acts of Defendant Coffee Theory complained of herein.

21. Because all of the acts of Defendant Coffee & Toast, LLC dba Coffee Theory complained of herein are intentional business torts, Defendant Michelle Al Bell aka Michelle Trinh is personally liable for individually doing the acts and directing Defendant Coffee Theory to commit those acts.

## FACTUAL BACKGROUND

22. Theory Coffee Company, LLC is a mobile specialty coffee trailer located in San Antonio, Texas, that opened for business on February 02, 2015.

23. Theory Coffee proudly serves a locally roasted coffee, out of nearby Round Rock, Texas.

24. Owner/Operator, Mark Vollmer Jr., has been serving the food and beverage industry for 22 years and counting.

25. Mark's love and passion for food translated into an education and degree in Culinary Arts from the Le Cordon Bleu program at the Texas Culinary Academy in Austin, Texas.

26. Over the years, he has held many positions in the restaurant, ranging from bus boy to kitchen manager.

27. In 2015, Mark was able to hone his skills in the preparation and craft of specialty coffee drinks.

28. Theory Coffee serves up an American Traditional approach to specialty coffee preparation, with the utmost care and attention paid to the highest quality in coffee drinks and food.

29. Theory Coffee has a coffee trailer that it parks every day on the southwest corner of Nacogdoches Road and Loop 410 in San Antonio.

30. The southwest corner of Nacogdoches Road and Loop 410 is a prima location with very high traffic count, easy entry and exit and plenty of parking.

31. But the location has one drawback, namely it is in a designated flood plain that prohibits the construction of a permanent high rise office building, making it ideal, available and affordable for Theory Coffee.

32. After launching, Theory Coffee quickly became a regular pitstop for commuters.

33. After years of negotiating with the City of San Antonio, it has agreed to let Theory Coffee improve the overall appearance of the property by adding greenery, lighting, street art and a community garden and keep his trailer on-site and connect to water and sewer services.

34. The ending of the Pandemic will allow Theory Coffee to move forward with its plans for a second location.

35. Theory Coffee recently learned about Coffee Theory when its customers asked Theory Coffee about is planned Austin, Texas location before Coffee Theory opened its doors.

36. Theory Coffee contacted Coffee Theory and advised Coffee Theory that is name would infringe the trademark rights of Theory Coffee.

37. Coffer Theory responded with a media campaign to bully Theory Coffee with a headline that "Online bullies harass Austin startup; owner turns experience into fundraiser."

38. In the news release Coffee Theory falsely stated that:

> "In a statement released last week, she described an online encounter from "bullies" in San Antonio.
>
> 'I never thought in a million years that we'd be faced with… bullies from two hours away in a city we've never been to, and for claims that are unwarranted and unfounded; people

who are trying to strong-arm and scare us out of our dreams and our business,' Michelle said.

She claims the bullies are a group of men believed to be partners and customers of a San Antonio-based coffee truck. She said they have used fear tactics, cursed and threatened her. The harassment started the last weekend of February, she said.

'I have tried to be kind, but they have only responded with more threats and hurtful comments.'

Michelle has 'zero tolerance' for bullying — something she's experienced throughout her childhood as an Asian American immigrant from a poor family."

39. Defendant published on its Instagram page with reference to Plaintiff that it wanted to:

**STOP BULLYING**

**EMPOWER WOMEN**

**ELIMINATE**

**RACISM**

And Defendant further posted:

"coffee_theory ATX friends: In light of the recent bullying events that we as a business have faced, we wanted to start a fundraiser for YWCA Greater Austin. We want to help the community get to a place where no individuals have to go through the hurtful things we went through.

As a female business owner of our mom and pop shop in Austin, I never thought in a million years that we'd be faced with a group of bullies from 2 hours away in a city we've never been to, for claims that are unfounded and unwarranted; people who are trying to strong-arm and scare us out of our dreams and our business but we're not going to let that stop us. Having been a victim of bullying throughout childhood, growing up as an Asian American immigrant from a very poor family, I have zero tolerance for bullying - whether over Race, business, or anything else. The recent posts from these folks have appalled and saddened me but I've learned that I have a moral obligation to not give in to bullies. Profanity, threats and intimidation tactics...we weren't looking for that, that's not why we're here. Our focus has always been to give, with our plans still being to provide support to Austin's animal shelters, orphan foundations, churches, first responders, and medical workers with a % of our profits through donations and events.

> YWCA Greater Austin is on a mission to eliminate racism, empower women, help families, and strengthen communities. This includes empowering men, women, and children toward healing from bullying through counseling. We are kicking off the fundraiser with a small donation, and 100% of your contributions go directly to the non-profit. #amplifyaustin
>
> We know there are a lot of heavy things going on in the world right now, and this is small in comparison, but during these pressing times, we want to take the stance of cheering each other on. We are here to open a fair and honest business in Austin, support the awesome place and people that we live with, and we hope you can support us any way you can.
>
> Our passions are coffee and toast and we are so honored and humbled to be a part of the Austin community!
>
> "Sticks and stones..."

40. Defendant's disparagement campaign against Plaintiff was not to "eliminate racism."

41. Contrary to Defendant's statement, Plaintiff is an "honest and fair business."

42. Although Coffee Theory did not name Theory Coffee in writing it did orally.

43. Furthermore, the customers of Theory Coffee would know that Theory Coffee was the "bully" that Coffee Theory was referring to.

44. No good deed of giving Coffee Theory a curtesy notice of its trademark infringement goes unpunished.

45. Defendant claims to have filed a complaint with the Austin Police Department against Plaintiff.

46. False assertions of "Bullying" and "hate" crimes and racism are the slur words of 2021 used against someone that are likely to insult them and damage their reputation.

47. Defendant published false or disparaging information about the Plaintiff.

48. Plaintiff's statements were false and the commercial disparagement was an injurious falsehood.

49. The statements of Defendant were not true.

50. Defendant made the false statements with malice.

51. The Defendant acted with ill will or intended to interfere in the economic interest of the Plaintiff.

52. The Defendant knew it was making a false statement and acted with reckless disregard for the truth.

53. The Defendant published a knowingly false statement harmful to the interests of Plaintiff and intended such publication to harm the Plaintiff's pecuniary interests.

54. Plaintiff is not a bully or a racist.

55. The disparaging statements of Defendant about Plaintiff are substantially false or misleading.

**COUNT I: FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE AND FALSE REPRESENTATIONS OF FACT**

56. Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

57. Plaintiff's mark is distinctive and indicates to consumers that its goods and its services originate from a single source.

58. Plaintiff's mark on its products and services symbolizes the substantial goodwill of Plaintiff resulting in significant sales of its high-quality goods and services.

59. Defendant's false designations of origin or source are likely to cause confusion, to cause mistake, or to deceive as to the origin or source of Defendant's goods or services or false or misleading description of fact, or false or misleading representation of fact.

60. Defendant has caused goods and services to enter into commerce regulated by Congress under a false designation or representation and has engaged in business disparagement and palming off and others act of unfair competition.

61. Defendant's use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendant's goods or services and Plaintiff's goods or services come from the same origin or source, or that Plaintiff sponsors or approves the goods or services of Defendant, or that Defendant and Plaintiff are somehow affiliated, connected, or associated with one another when, in fact, they are not.

62. Defendant's use in commerce of false designations of origin or source or false or misleading description of fact, or false or misleading representation of fact is injuring the goodwill of Plaintiff's mark.

63. The action of Defendant constitutes a violation of the federal Lanham Act, 15 U.S.C. § 1125.

64. At no time has Plaintiff authorized Defendant to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendant's branded goods and services.

65. Defendant is knowingly and intentionally misrepresenting and falsely designating to the public the affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendant's goods and services to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source endorsement, sponsorship, and approval of Defendant's products or services and making false or misleading descriptions of fact, or false or misleading representations of fact.

66. Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing use of false designations of origin or source.

67. Defendant's false designations of origin or source is irreparably injuring Plaintiff's goodwill and eroding Plaintiff's share of market, and unless enjoined by this Court, will continue to do so.

68. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendant's violations, an accounting of profits made by Defendant on sales of its goods or services, and recovery of Plaintiff's costs of this action.

69. Defendant has willfully and wantonly used false designations of origin or source, and false or misleading description of fact, or false or misleading representation of fact and its actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Plaintiff.

70. The intentional engaging in false designation of origin or source or false or misleading description of fact, or false or misleading representation of fact by Defendant makes this an exceptional case entitling Plaintiff to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

**COUNT II: TEXAS TRADEMARK INFRINGEMENT**

71. Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

72. Plaintiff's use of the mark predates any alleged use by Defendant in the United States.

73. Defendant's use of is calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Plaintiff's products, or that that they are sponsored by, connected with, or supplied under the supervision of Plaintiff.

74. Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Plaintiff to readily obtain customer acceptance of its goods

offered for sale, and to give Defendant's goods a salability they would not otherwise have, all at Plaintiff's expense.

75. Defendant's aforementioned acts constitute trademark infringement in violation of the common law of the State of Texas.

76. As a direct and proximate result of Defendant's above-described conduct, Plaintiff has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

77. Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Plaintiff has no adequate remedy at law, injury to the reputation and good will of Plaintiff as well as confusion and deception among consumers.

78. Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiff's rights, were intended to cause confusion, and to trade off the good will in Plaintiff's mark, making this an exceptional case and entitling Plaintiff to enhanced damages and attorneys' fees at least as provided under Texas Civil Practices & Remedies Code § 41.003.

**COUNT III: TEXAS UNFAIR COMPETITION**

79. Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

80. Defendant's use of the mark is calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Plaintiff's products, or that that they are sponsored by, connected with, or supplied under the supervision of Plaintiff.

81. Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Plaintiff to readily obtain customer acceptance of the goods and services offered for sale, and to give Defendant's goods and services a salability they would not otherwise have, all at Plaintiff's expense.

82. Defendant's adoption and use of on its goods and services constitutes unfair competition, palming off, passing off, and unjust enrichment in violation of the common law of the State of Texas.

83. By such use, Defendant has represented that its goods are those supplied by Plaintiff.

84. This use creates likelihood that the public will be confused or deceived.

85. Defendant's aforementioned acts constitute unfair competition in violation of the common law of the State of Texas.

86. As a direct and proximate result of Defendant's above-described conduct, Plaintiff has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

87. Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Plaintiff has no adequate remedy at law, injury to the reputation and good will of Plaintiff as well as confusion and deception among consumers.

88. Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiff's rights, intended to cause confusion, and to trade off the good will in Plaintiff's mark, thus making this an exceptional case and entitling Plaintiff to enhanced damages and attorneys' fees, at least as provided under Texas Civil Practices & Remedies Code § 41.003.

**COUNT IV: TRADEMARK DILUTION IN VIOLATION OF TEX. BUS. & COMM. CODE § 16.103**

89. Plaintiff incorporates by reference the factual allegations in this complaint as though fully set forth herein.

90. "Dilution" means dilution by blurring or dilution by tarnishment, without regard to the presence or absence of: (A) competition between the owner of a famous mark and another person; (B) actual or likely confusion, mistake, or deception; or (C) actual economic harm.

91. The owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

92. A mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner.

93. Plaintiff's marks are famous marks in that they are widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of Plaintiff.

94. Based on the activities described above, Defendant has diluted and continue to dilute the distinctiveness of the Plaintiff's famous marks under section 16.103 of the Texas Business & Commerce Code.

95. Defendant's acts complained of above are likely to injure Plaintiff's business reputation or to dilute the famous, distinctive quality of the marks by, at the very least: (i) eroding the public's exclusive identification of Plaintiff's famous marks, (ii) lessening the capacity of Plaintiff's famous marks to identify and distinguish Plaintiff's goods and services, (iii) associating

the Plaintiff's marks with products and/or services of inferior quality, or (iv) by impairing the distinctiveness of Plaintiff's famous marks.

96. Defendant's use of is likely to weaken or otherwise jeopardize Plaintiff's highly valuable rights in its marks.

97. Defendant's use of constitutes "dilution by blurring" and causes an association arising from the similarity between Defendant's mark and Plaintiff's famous mark that impairs the famous mark's distinctiveness.

98. Defendant's use of constitutes "dilution by tarnishment" and causes an association arising from the similarity between Defendant's mark and Plaintiff's famous mark that harms the famous marks' reputation.

99. Pursuant to Texas Business & Commerce Code §16.103, Plaintiff is entitled to bring this action to enjoin Defendant from further injuring Plaintiff's business reputation or diluting the distinctive quality of the Plaintiff's marks.

100. Plaintiff will be irreparably injured unless such action is enjoined by this Court as provided by Texas law.

101. Defendant's dilution has been willful and intentional, making this case eligible for an award of enhanced profits and damages under Texas law, as well as an award of Plaintiff's attorneys' fees.

## NOTICE OF LITIGATION HOLD REQUIREMENT

102. Defendant is hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant know, or

reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

103. As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents or employees if Defendant's electronically stored information resides there.

104. Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation

duties include, but are not limited to, the requirement that Defendant immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

**JURY DEMAND**

105. Plaintiff hereby demands a trial by jury.

**PRAYER**

WHEREFORE, Plaintiff demands judgment for itself and against Defendant by this Court as follows:

A. Enter an injunction prohibiting Defendant and its respective officers, directors, agents, servants, employees, related companies, licensees, and all persons acting for, with, by, though, and under any of them, from any and all use and direct and indirect infringement of the Plaintiff's Mark, and any other Plaintiff's mark, names and/or logo, and false designations of origin or source or false or misleading description of fact, or false or misleading representation of fact and Defendant's dilution, unfair competition and palming off or any derivation thereof directly or indirectly, for itself, or through, on behalf of, or in conjunction with the sale or offer of any products or services by Defendant;

B. Enter judgment in favor of Plaintiff for actual damages in an amount to be determined by the Court, where such damages are trebled due to Defendant's willful and intentional disregard of Plaintiff's known rights, pursuant to at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

C. Enter judgment in favor of Plaintiff for Defendant's profits in an amount to be determined by the Court, where such profits are trebled due to Defendant's acts of willful and

intentional disregard and violation of Plaintiff's known rights, pursuant to at least 15 U.S.C.§ 1117 and Texas Business & Commerce Code sections 16.102-16.104;

D. Award Plaintiff all costs of the action and reasonable attorneys' fees pursuant to the provisions of at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

E. Order Defendant to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant have complied with the injunctions;

F. Allow Plaintiff recovery of all damages it has sustained because of Defendant' activities, and that said damages be trebled;

G. Order that an accounting be directed to determine Defendant' profits resulting from the activities complained of herein, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of the case;

H. Allow Plaintiff recovery of its costs of this action and prejudgment and post-judgment interest; and

I. Plaintiff be awarded such other relief as the Court deems just and equitable.

April 20, 2021

Respectfully submitted,

Hanor Law Firm PC
By_/s/ Charles W. Hanor
Charles W. Hanor
750 Rittiman Road
San Antonio, Texas 78209
Telephone: (210) 829-2002
Fax: (210) 829-2001
chanor@hanor.com
Texas Bar No. 08928800

ATTORNEYS FOR PLAINTIFF